POSTAL TELEGRAPH–CABLE CO. v. CITY OF MOBILE.

(Circuit Court, S. D. Alabama. March 11, 1909.)

No. 269.

1. COURTS (§ 289*)—UNITED STATES COURTS—JURISDICTION—NATURE OF SUB-JECT-MATTER.

The United States Circuit Court has jurisdiction of an action by a telegraph company to restrain the enforcement of a tax of $1,000 by the municipality, on the ground that it is a tax on interstate commerce and is discriminatory; it being alleged that the damage to the complainant was greatly in excess of $2,000.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830; Dec. Dig. § 289.*]

2. COMMERCE (§ 72*)—MEANS OF REGULATION—TAXATION.

No state can levy a tax on interstate commerce in any form, whether by duties laid on the transportation of subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 123–136; Dec. Dig. § 72.*

Taxation of interstate commerce by state, see note to Board of Assessors v. Pullman's Palace Car Co., 8 C. C. A. 492.]

3. COMMERCE (§ 28*)—INTERSTATE COMMERCE.

Telegraph business is interstate commerce, and the telegraph company is engaged in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 22; Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

4. INJUNCTION (§ 152*)—PRELIMINARY INJUNCTION—HEARING—BURDEN OF PROOF.

On a motion for preliminary injunction, the burden is on complainant to satisfy the court that there is at least a reasonable probability of ultimate success on the question of jurisdiction as well as on the merits of the controversy.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 152.*]

5. INJUNCTION (§ 144*)—PRELIMINARY INJUNCTION—HEARING.

On a motion for preliminary injunction, allegations of the bill are to be taken as true.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 316, 317, 321; Dec. Dig. § 144.*]

In Equity. Bill by Postal Telegraph-Cable Company against the City of Mobile. Decree for complainant.

Fitts & Leigh, for complainant.

B. B. Boone, for defendant.

TOULMIN, District Judge. The allegations of complainant's bill are as follows:

First. The complainant, the Postal Telegraph-Cable Company, is a corporation, incorporated under the laws of the state of Delaware, and that it has accepted the provisions of the act of Congress approved July 24, 1866 (chapter 230, 14 Stat. 221), and the amendments and supplements thereto, and is operating under the terms of said

act and in accordance with its provisions. That by virtue thereof its poles and wires have been at all times, and are now, used for the transmission of telegraph messages for the United States government and the various departments thereof at prices fixed from time to time by the Postmaster General of the United States in accordance with the terms of said act of Congress. And that the highways upon which said poles and wires are constructed and operated are post roads and post routes within the meaning of said act of Congress, and the other acts of Congress defining post roads and post routes.

Second. That the city of Mobile is a municipal corporation, vested with certain delegated powers; the same being the corporate name of a municipality in the Southern division of the Southern district of the state of Alabama.

Third. That the said complainant is engaged in business as a public service corporation in sending messages by wire throughout the United States, and, by means of connection with cable lines, to all portions of the world. That as such public service telegraph corporation the said complainant maintains an office in the city of Mobile for the purpose of receiving and transmitting messages from the citizens of the city of Mobile and vicinity to the outside world, and for the purpose of receiving and delivering messages from the outside world to the citizens of the city of Mobile and vicinity. That the wires of the complainant telegraph company diverging from the city of Mobile and from the state of Alabama connect with other wires in other states, and telegraph messages are transmitted thereon into and through other states of the United States, and to all of the principal towns and cities therein; and connection is also had with cables under and across the Atlantic Ocean. And the company is engaged in sending and transmitting messages to all of the states of the United States and receiving and delivering messages from all of the states of the United States, and is engaged in interstate commerce.

Fourth. That the mayor and general council of the city of Mobile, which is the governing body of said city, by an ordinance approved on the 31st day of December, 1908, commonly called the "license ordinance," has exacted, and does exact, of and from each telegraph company doing business in the city of Mobile in the year 1909 an annual license or privilege tax in the sum of $1,000. That the said ordinance in question is unreasonable, unjust, and excessive, and is illegal and void, because it is designed and intended to provide revenue by this form of taxation for the general expenses of the city of Mobile, and that no other object than this exists or has at any time existed for the exaction of the large sum of money imposed by the ordinance. That the city of Mobile is under no expense whatever in connection with issuing the license required to be taken out by the said ordinance, and has not been at any time heretofore, nor will it be during the year 1909 put to any expense or charge whatever in connection with inspecting and regulating the poles, wires, or business of this complainant. That this privilege tax or license fee imposed by the said ordinance complained about is not based on the cost and expense to the city incident to any inspection and supervision and

regulation of the complainant's lines and business within the said city; but that it is imposed notwithstanding it is more than 20 times the amount that could possibly be incidental to any such inspection, supervision, and regulation, together with all reasonable measures and precautions that might possibly and could be required to be taken by the said city of Mobile for the safety of its citizens and the public. That the license or privilege charge by the said ordinance is grossly excessive, and that, if every town or city in the state of Alabama in which the complainant company maintains an office should pass similar ordinances, the total amount exacted from the complainant company would exceed $25,000 per annum; and if the same kind of ordinances, providing for excessive privilege taxes for the towns and cities in all the other states of the United States in which the complainant company maintains offices, were adopted, that company could not possibly pay the aggregate amount of such privilege taxes, but would immediately become insolvent by reason of the fact that the expense of operation, including such privilege or license taxes, would be far in excess of the gross receipts of the complainant company from the whole country at large.

Fifth. The complainant company is a corporation engaged in legitimate business. That it is engaged in interstate commerce by transmitting telegraphic communications among the several states of this Union. That this is a lawful business, and that the said complainant company pays just and lawful taxes upon the assessed value of its property to the state of Alabama, to the county of Mobile, and to the city of Mobile, and that it is in arrears with respect to none of these taxes. That the license tax complained of is in addition to all of the other taxes levied by the state of Alabama, the county of Mobile, and the city of Mobile, and is in this respect unfair, unjust, and unequal and in direct violation of law. Complainant further shows unto your honors that while the said license tax purports to be levied only upon business destined from the Mobile office to points within Alabama, and upon business originating within the state of Alabama and subject to delivery at the Mobile office, that as a matter of fact, in addition to being excessive and confiscatory, it is violative of the guaranteed constitutional right which inures to and in favor of this company to maintain an office in the city of Mobile for the purpose of engaging in the business for which it was chartered, and is violative of the right of the complainant company to carry on interstate commerce unhampered and unimpeded. That the right thus involved is a valuable right, worth to complainant many thousand dollars— worth certainly in excess of $2,100. That, if the defendant municipal corporation is allowed to exact the said excessive license fee, it is destructive, and will be destructive, of the right of this complainant corporation to maintain an office in the city of Mobile for the transaction of the business for which it was chartered, and that, in the face of such license exaction in addition to the other taxes imposed by law, it will be impossible for the complainant company to maintain such an office without actual loss.

Sixth. Complainant further shows unto your honors that by actual

arithmetical calculation taken from the auditor's department, and as a matter of fact the gross receipts derived by the Postal Telegraph-Cable Company from all of the interstate business done from and into the city of Mobile in the year 1908 amounted to $24,446.86, while the expenses properly apportionable to said interstate business so done in the said city of Mobile amounted to in the year 1908 $16,216.35, without taking into consideration any of the superintendence or general office expenses, or any interest on the investments of the company in the said city of Mobile. That the total gross receipts derived by the company from the intrastate business done by it in the city of Mobile in the year 1908 amounted to only $2,247.93, while the expenses properly apportionable to the said intrastate business done in the said city of Mobile by the complainant company in the year 1908 amounted to $1,341.40, without taking into consideration any of the general office expenses or interest charges above referred to. Wherefore the complainant company could not afford, under the facts as just hereinabove set out, to continue to do business in the city of Mobile were it not for the advantages it derives therefrom in connection with the business done by it in other and more populous parts of the United States where its patrons demand connection with the important towns and cities of the rest of the country, and complainant necessarily maintains its office in the city of Mobile, not for the financial income it receives at Mobile, but for the purpose of meeting this demand of its patrons in other cities and states throughout the United States and in connection with the operation of its general interstate telegraphic business. And that in operating this office in the city of Mobile for interstate business it is absolutely necessary that it should likewise receive and transmit all messages offered to it which are intrastate in character and addressed to places at which it has offices in the state of Alabama, for under the law, as a public carrier, it cannot refuse to accept such intrastate business so long as it keeps the Mobile office open and undertakes to maintain it as an office of public service corporation for the conduct of a general interstate telegraphic business.

Seventh. That the said complainant is not engaged in transmitting telegrams from one portion of the city of Mobile to another portion of the said city; nor is it engaged in receiving telegrams sent from one portion to another portion of the said city; but it is engaged exclusively in transmitting telegrams from points in Mobile to points outside of that city, and in receiving telegrams in the city of Mobile from points entirely outside of that city. That the complainant is not an inhabitant of the city of Mobile and does not transact or offer to transact business therein in such a sense as to bring it within the power of the mayor and general council of the said city to assess an occupation tax against this complainant. That the laws of the state of Alabama providing for the collection of taxes for the state and its political subdivisions, including the city of Mobile, is exhaustive of the legal right to tax telegraphic companies, and the city of Mobile has no right or power to collect an additional tax of any kind whatsoever from the complainant company, or to receive or collect any tax

from it except such as it is entitled to receive under its delegated power to tax property located within the city of Mobile; and, therefore, said ordinance seeking to collect an occupation tax from this complainant is absolutely void.

Eighth. Complainant further shows unto your honors that the said tax is discriminatory and denies to the complainant company the equal protection of the law, and for this reason is void and contrary to the provisions of the Constitution of the United States. That the ordinance imposing said tax, though it purports to levy the same against the intrastate business done by the complainant company in the city of Mobile, is in fact a disguised effort to impose a tax against the entire business of the complainant company done in the city of Mobile, including its interstate business, and is therefore an unlawful interference with, and a tax upon, the interstate business of the company, and void, because contrary to the Constitution and laws of the United States relative thereto. And complainant further shows unto your honors that it is impossible to ascertain the exact extent of the injury to which the complainant will be subjected by this interference with its general business and the interruption to and interference with its interstate business, but that the harm and injury to the complainant will be largely in excess of the sum of $2,000.

Ninth. Complainant further shows that the defendant is intending and threatening to attempt to enforce the provisions of the said ordinance complained about, and is intending and threatening to attempt to collect the said tax, and will do so unless restrained therefrom by the proper orders of this honorable court. That the said defendant is threatening through its police officers and arresting powers to arrest and imprison the local manager of the telegraph office in the city of Mobile for the failure to pay the tax or exaction complained about, and will do so unless restrained and enjoined therefrom by the proper mandates of this honorable court. Complainant further shows unto your honors that the value of the business of the complainant company in the city of Mobile which the defendant threatens and is about to attempt to destroy, taken in connection with and related as the city of Mobile, a large cotton and timber market, is with the other markets of the world, is of very great value, and above the value of the sum of $2,000 exclusive of all interests and costs, and that the harm, injury, and interruption to which the complainant will be subjected by the arrest of its manager and operators, and their repeated arrest in the attempt to coerce the payment of the said license or occupation tax, will be of the value of more than $2,000 exclusive of interest and costs.

Tenth. Complainant further shows that the Postal Telegraph-Cable Company is a solvent corporation, owning large property within the state of Alabama and within the southern district of the state of Alabama, and within the jurisdiction of this honorable court, and that any recovery had against the said complainant company for any tax or claim enforceable or collectible by law can be collected by due process without undue annoyance or delay.

Here follow the prayers for process, and for a temporary writ of injunction restraining defendant from collecting said tax or interfering with the business or employés of complainant, until final decree, and a prayer that, on final hearing, the temporary injunction be made perpetual, thereby forever enjoining and restraining the defendant, its servants or employés, from attempting to collect the said license, occupation, or privilege tax, and from attempting to coerce the payment of the same, or to make any arrests or bring any suits, or otherwise enforce the same.

### On Motion for Preliminary Injunction.

1. That the court has jurisdiction. Western Union Telegraph Co. v. City Council of Charleston (C. C.) 56 Fed. 419; Parlin & Orendorff v. Moline Plow Co. (C. C.) 89 Fed. 330, 32 C. C. A. 221; The Adula (D. C.) 89 Fed. 357; Simpson-Crawford Co. v. Borough of Atlantic Highlands (C. C.) 158 Fed. 372; Meyer, Jossen & Co. v. City of Mobile (C. C.) 147 Fed. 843; Humes v. City of Ft. Smith, Ark. (C. C.) 93 Fed. 857.

2. No state can levy a tax on interstate commerce in any form, whether by way of duties laid on the transportation of subjects of that commerce, or the receipts derived from that transportation, or on the occupation or business of carrying it on. Ficklen v. Shelby County Taxing Dist., 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150.

3. Telegraph business is interstate commerce, and the telegraph company is engaged in interstate commerce. Leloup v. Port of Mobile, 127 U. S. 641, 8 Sup. Ct. 1383, 32 L. Ed. 311; Ware & Leland v. Mobile County, 209 U. S. 410, 28 Sup. Ct. 526, 52 L. Ed. 855; Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 24 L. Ed. 708.

4. "Upon a motion for preliminary injunction, the burden is upon the complainant to satisfy the court that there is at least a reasonable probability of ultimate success upon the question of jurisdiction as well as upon the merits of the controversy." Huntington v. City of New York (C. C.) 118 Fed. 683.

The bill alleges that the complainant's business is interstate commerce, that it is engaged in such business, that the enforcement of the city ordinance complained of in the bill would impose such a burden on complainant as not only to substantially impede and hamper its said business, but that the license tax sought to be collected is unreasonable and confiscatory, and that its exaction would be destructive of the rights of the complainant.

As the case is now presented, and for the purposes of this hearing, the allegations of the bill are to be taken as true, and the preliminary injunction is ordered.

NOTE.—By decree of January 17, 1910, the temporary writ of injunction above referred to was made perpetual, upon the submission of the cause for final decree.